## Sheriff of Dauphin County v. Dauphin County.

*Public officers—Sheriffs—Fees—Fines, levy and collection—Act of July 11, 1901.*

1. The sheriff is entitled to collect from the county a fee of three cents per dollar upon a fine which has been paid to him by a prisoner in his custody upon his having delivered the money to the county treasurer.

2. A "fine" is a penalty imposed for the commission of a crime or misdemeanor.

3. The word "levy" has various meanings. With reference to taxes, it is used in the sense of assessment or collection. It is used in the sense of the levying of an execution. To levy war is to make war. To levy money is to exact it. The word also has a technical meaning in law which is to collect money.

4. The Act of July 11, 1901, P. L. 663, allows a sheriff, "For levying or paying out fines, three cents per dollar," and the word "levying," as used in that act, is used in the sense of "collecting." The intention of the act is to provide compensation to the sheriff for the payment by him of a fine received by him from a person who has been sentenced to pay a fine and committed to his custody until the sentence has been carried out.

Case stated. C. P. Dauphin Co., Sept. T., 1922, No. 246.

*Beidleman & Hull,* for plaintiff.

*William H. Earnest,* County Solicitor, for defendant.

HARGEST, P. J., April 16, 1923.—This controversy arises upon a case stated, in which the following are the essential facts:

John W. Geist, upon a plea of guilty of selling intoxicating liquors, was sentenced to pay a fine of $1000 and the costs of prosecution, or to give bail to pay the same within ten days, and was committed to the custody of the sheriff until his sentence was complied with. He paid the fine of $1000 to the

3 D. & C.

sheriff, and on the same day paid the costs. The sheriff paid to the Treasurer of Dauphin County the said sum of $1000, without deducting three cents on the dollar, which amount is now claimed by him as fees. The Act of July 11, 1901, P. L. 663, establishing and regulating the fees to be charged and collected by sheriffs, contains, among other things, the following provisions:

"For levying or paying out fines, three cents per dollar, to be paid by the party receiving fine.

"For the execution of any matter directed to the sheriff, or authorized by law or rule of court, or for services not herein provided for, the sheriff shall receive the same fees as for similar services herein provided for."

It is contended by the plaintiff that, by receiving and paying to the county treasurer the fine in question, he comes within the provisions of the Act of 1901. On the other hand, the defendant contends that the sheriff had no authority to levy this fine, nor even to collect it, and that, therefore, he is not entitled to the compensation claimed. The sheriff's fee bill, contained in the Act of April 2, 1868, P. L. 3, has the following provision: "Levying fines, per dollar, three cents."

A "fine" is a penalty imposed for the commission of a crime or misdemeanor: Schick v. United States, 195 U. S. 65, 49 Law Ed. 33; State ex rel. McNamee v. Stobie, 194 Mo. 14, 92 S. W. Repr. 191, 212; Com. v. French, 130 Ky. 744, 114 S. W. Repr. 255; United States v. Mitchell, 163 Fed. Repr. 1014, 1016; 3 Words and Phrases, 1 Ed. 2811.

It is in accord with the rule of the common law to impose an order of commitment until payment of the fine is made: Ex parte Bryant, 24 Fla. 278, 12 Am. State Rep. 200, note, 202; Bishop's Crim. Proc., §§ 1132 and 1135. This practice has prevailed in England from the earliest times: Rex v. Hord, Sayers, 176; Regina v. Layton, 1 Salk, 353; Godfrey's Case, 11 Coke, 42 a; Regina v. Dunn, 12 Q. B. 1026. The practice of commitment to enforce the payment of a fine has been generally followed in this country: Brock v. State, 22 Ga. 98, 101; Ex parte Jackson, 96 U. S. 727; Hill v. State, 2 Yerg. 247; Hudeburgh v. State, 38 Tex. 535. So that the defendant, Geist, immediately after the sentence was imposed, was properly within the custody of the sheriff.

The defendant, however, contends that the sheriff could not levy a fine, and that there is no meaning of the word "levy" which could properly be applied to the duty of the sheriff with reference to this fine. There are various meanings to the word "levy." It is used in the sense of the assessment of taxes, the levying of an execution, the levying of war, but it is also used in the sense of collection.

In Rhoads v. Given, 5 Houst. (Del.) 183, 186, it is held that when the word "levy" is employed in reference to a tax, it refers to the collection rather than the assessment.

In Collins v. Terrall, 6 Miss. Rep. (2 Sm. & M.) 383, 386, it is said: "The word 'levy' in law has a technical meaning, which is to collect the money."

In Lloyd v. Wyckoff, 11 N. J. L. J. 218, 227, it is said: "The phrase 'to levy' bears different significations according to its object. To levy war is to make war. To levy money is to exact it."

The legislature must be presumed to have used the word intelligently, and we must give it a meaning which will give force and effect to the statute. We cannot assume, as contended by the defendant, that the word "levy" allows the sheriff the fees prescribed only when, of his own motion, he levies a fine. We know of no instance in the law of Pennsylvania where the sheriff can seize property for or levy a fine without being thereto directed by some process. Nor do we think that the case of King v. Wolf, 1 Chitty, 428, states the law

of Pennsylvania to the extent that it is authority for the proposition that the sheriff, of his own motion, is justified in "levying" the fine upon the property of the defendant. Therefore, we cannot agree that the general language of this statute provides for compensation in such cases only where the sheriff, of his own motion, levies the fine.

It is also contended that the sheriff had no right to collect the fine; that the fine was payable to the clerk of the court for transmission to the treasurer of the county. We cannot agree with that contention. The defendant was in the custody of the sheriff. He was unable to reach the clerk of the court or the treasurer of the county, unless the sheriff provided the method.

In Schwamble v. Sheriff, 22 Pa. 18, 21, the court assumed that the prisoner had a right to pay the fine to the sheriff, saying: "The prisoner is bound to pay the fine to the sheriff or to the treasurer." The practice of paying fines to the sheriff is of ancient origin. Section 6 of the Act of Dec. 9, 1783, 11 Stat. at L. 222, 224, entitled "An act for supplying an act entitled 'An act for the effectual recovering and securing the fines, forfeitures and other moneys due or belonging to the Commonwealth, for the use of the same,'" provides that clerks, prothonotaries, registers, justices of the peace and all other persons who receive or are accountable to the Commonwealth for fines, issues, amercements and forfeited recognizances, shall "within three months after they have received any such sum or sums of money, pay the same into the hands of the high sheriff of their respective counties, and the said sheriff shall, on the first day of November in every year hereafter (and as often as thereunto required by the comptroller-general), render an account of all such moneys. . . . The said sheriffs deducting a commission of 2½ per centum for their trouble in collecting such moneys," etc.

Section 5 of the Act of April 4, 1803, 17 Stat. at L. 500, recites that certain fines are "now paid into the hands of the sheriff of the proper county," and requires the sheriff to notify the overseers of the poor, so that disposition of such fines may be made. Section 18 of the Act of Feb. 6, 1804, 17 Stat. at L. 557, and section 16 of the Act of Feb. 13, 1804, 17 Stat. at L. 591, disclose that certain fines, penalties and forfeitures are required to be paid to the sheriff of the proper county. We are, therefore, not prepared to say that the sheriff has no right to collect fines, and if he has the right to collect them, then he must pay them to the proper party. A fine, being the penalty imposed for the commission of an offence, generally goes to the county. There are some penalties, and, perhaps, in rare instances, some fines, which may be payable in part to informers, but it could hardly be contended that the general language of a fee bill was intended to apply only to the collection and payment to informers.

Nor do we think this language must be limited to cases in which process is resorted to for the collection of the fine. In that event an appropriate writ is issued, and the sheriff's fees are provided for in the execution of such writ and the collection of money thereon.

To adopt the contention of the defendant, we would have to practically construe this provision of the law as meaningless and surplusage. It is our duty to so construe it as to make it harmonize with the other provisions of the act, and we think this can only be done by concluding that the word "levying" is used in the sense of "collecting," and that the act intends to provide compensation to the sheriff for the payment by him of a fine received by him from a person who has been sentenced to pay a fine and committed to his custody until the sentence has been carried out.

3 D. & C.

Moreover, the statute provides that the sheriff shall receive for services not therein provided for, or for the execution of any matter directed to him, the same fees as for similar services that are provided for in the statute. So that, even though the provision which we have been discussing did not cover this case, it covers similar services, and the compensation to the sheriff would be measured thereby.

Judgment is, therefore, directed to be entered on the case stated in favor of George W. Karmany, plaintiff, and against the County of Dauphin, for the sum of $30 and costs.          From William Jenkins Wilcox, Harrisburg, Pa.