## Myers et al. v. Lancaster County Commissioners.

*Inter-county bridge — Financing of — Payment of cost by tolls — Constitutional law — Section 10, article ix, of Constitution — Act of June 28, 1923.*

1. Counties are legally authorized by joint arrangement with other counties to build inter-county bridges and to make such arrangements as are agreeable to them for the taking of tolls until the money expended, with interest, is paid, subject to the approval of the State Highway Department; but when they borrow for such a purpose they must do it strictly in accordance with section 10, article ix, of the State Constitution, and cannot create an indebtedness for this purpose resting solely on the tolls collected and without providing for the payment of principal and interest by taxation in addition to such tolls. If the intention of the Act of June 28, 1923, P. L. 875, is to give such authority, it is to that extent unconstitutional and void.

2. Under section 10, article ix, of the Constitution of Pennsylvania, it is necessary that provision be made for the collection of an annual tax sufficient to pay the interest and also the principal of such indebtedness within thirty years.

3. In determining whether any legislative or municipal act conflicts with the Constitution, its substance, not its form, must always be the test.

Bill for injunction. Final hearing. C. P. Lancaster Co., Equity Docket No. 7, page 243.

*Myers, Zimmerman & Kready*, for plaintiffs.

*J. Andrew Frantz, J. Roland Kinzer* and *John E. Malone*, for defendants.

LANDIS, P. J., Sept. 11, 1926.— . . . No testimony was taken, and the case came before the court on bill and answer. The following facts are now found:

### Findings of fact.

The plaintiffs are qualified electors, citizens and residents of the County of Lancaster, and are the owners of real estate situated within the said county. As such, they have paid, and in the future will pay, taxes assessed against them.

Myers et al. *v.* Lancaster County Commissioners.

The defendants are the duly elected Commissioners of the County of Lancaster, and are engaged in executing the duties pertaining to their offices. As County Commissioners of the County of Lancaster, and in conjunction with the County Commissioners of the County of York, they propose to erect a bridge across the Susquehanna River, between the Borough of Wrightsville, in the County of York, and the Borough of Columbia, in the County of Lancaster. Ordinary low water-mark on the York County side of the river forms the division-line between the said counties. The cost of this proposed bridge is to be paid by the County of York and the County of Lanacter in equal proportions, and it is estimated that that cost will be about $3,000,000. The proportion of cost which the County of Lancaster will be required to pay will, therefore, be about $1,500,000. On April 21, 1926, this proposal was presented to the Grand Jury of the County of Lancaster and was approved by it, and on April 24, 1926, the Court of Quarter Sessions of Lancaster County approved the action of the said grand jury, and also approved the proposal of the Commissioners of Lancaster and York Counties to erect the said bridge.

On May 22, 1926, the county commissioners presented their petition to the Court of Quarter Sessions of the County of Lancaster, setting forth, among other things, that the proportion of cost of the building of said bridge which the County of Lancaster will be required to pay is so large an amount that to provide the funds necessary to pay the same by a single tax levy would be burdensome to the taxpayers, and that the county commissioners deemed it expedient to issue and sell interest-bearing bonds of the County of Lancaster for the purpose of raising funds to defray the proportion of the County of Lancaster for the building of the said bridge, and praying the court to approve of the proposal of the said commissioners to issue and sell to the highest bidder bonds at not less than their face value to an amount not to exceed $1,500,000 for the aforesaid purpose. On the same day, the Court of Quarter Sessions of the County of Lancaster entered an order assenting to this proposal.

By the said proceedings the Commissioners of the County of Lancaster have signified their intention to issue and sell interest-bearing bonds of the County of Lancaster in a sum not to exceed $1,500,000, in accordance with the provisions of the Act of June 28, 1923, P. L. 875, and they have not made any provision, nor do they intend to do so, for the collection of an annual tax sufficient to pay the interest and also the principal of said debt within thirty years. It is their intention to build said bridge and to issue and sell interest-bearing bonds of the County of Lancaster in a sum not exceeding $1,500,000, but to assess, supervise and collect tolls for the use of the proposed bridge sufficient to pay the interest upon said bonds and to create a sinking fund for the payment and redemption of them, in accordance with the said act.

The answer of the defendants expressly avers that there is no necessity for the levy of a tax to pay the principal of the said debt within the period of thirty years, for the reason that the debt to be created from the building of the bridge is to be incurred in accordance with the provisions of the Act of 1923, and that that act simply requires that the bonds to be issued for the purpose of building an inter-county bridge shall be approved by the Courts of Quarter Sessions of the counties in which the bridge is to be built, and that the debt so incurred is not to be paid by funds raised by taxation, but by the collection of tolls for the use of the bridge.

Therefore, under the admitted facts, the question presented to us is whether or not, in creating the loan, provision must be made for the payment of the interest and indebtedness by taxation within thirty years, or whether the

county commissioners can borrow the money, relying solely upon the tolls which it is expected will be received for the use of the bridge to pay such indebtedness, with interest.

### Conclusions of law.

The County of Lancaster has at the present time no outstanding indebtedness unprovided for, and, therefore, as the amount intended to be borrowed is much less than 2 per centum of the valuation of the taxable property within the county, no question can arise as to the authority of the county commissioners to make a loan of $1,500,000. However, even if the situation were otherwise, the voters of the county, at an election held for that purpose, have fully empowered them to make such a loan.

But can they create an indebtedness and issue bonds based upon the faith of the tolls collected from the bridge for the payment of the bonds and interest, and relying solely upon these tolls? I doubt whether such an amount of money can be procured upon such a hazard. In case the receipts from the bridge are inadequate for these purposes, or in case, perchance, the bridge, by flood or otherwise, should be destroyed, serious loss would naturally follow. That proposition, however, is not before us. In case such a liability rests upon the tolls collected, it will not be necessary for the county authorities to borrow the money in the manner required by the Constitution when indebtedness is incurred by a municipality or quasi-municipality.

Section 1 of the Act of June 28, 1923, P. L. 875, provides: "That when, in the opinion of the county commissioners of any county, the cost of building a county bridge or bridges to be erected therein, or the said county's proportionate share of the cost of a bridge to be erected over a river or stream upon the line between it and an adjoining county, or the cost of acquiring a toll bridge or bridges in any county, or a toll bridge erected over a river or stream upon the line between adjoining counties, is so large in amount that to provide the funds necessary to pay the same by a single tax levy would be burdensome to the taxpayers, said commissioners, having first secured the approval of the Court of Quarter Sessions of their county so to do, may issue and sell to the highest bidder, at not less than their face value, interest-bearing bonds of the county for the purpose of raising funds to defray the costs aforesaid." In this case, the county commissioners were of the opinion that, to provide the funds for the building of the intended bridge by a single tax levy would be burdensome to the taxpayers, and they, therefore, proposed to issue bonds for the same. They secured the approval of the Court of Quarter Sessions to their proposition. There is nothing in the law to prevent a joint arrangement for the building of such a bridge between counties, and if it is done in a proper and legal way money can be borrowed for such a purpose. I see nothing unconstitutional in this section of the act.

The second section of the Act of 1923 declares that "whenever any counties shall erect any joint county bridge, or jointly acquire any toll bridge, the said counties may pay the cost of the construction and erection or acquisition of such bridge in equal proportions, or in any other proportions as the commissioners of the several counties may agree upon. Whenever it is necessary for any counties, in the construction of any joint county bridge, or in joint acquisition of any toll bridge, to issue bonds in payment of such construction, erection or acquisition, the commissioners of said counties may, with the consent of the State Highway Department, if the cost of such bridge was in excess of $400,000, assess, supervise and collect such tolls for the use of said bridge for all traffic as may be necessary to pay the interest on said bonds

and to create a sinking fund for the payment and redemption of the same. The tolls so collected shall be distributed between such counties in proportion to the amount paid in by each county in the original construction or acquisition, and in no case shall any tolls be collected after the redemption of the original bonds issued." I think a bridge can be constructed and tolls charged, under this act, under such arrangement for their distribution as is provided in this section.

The office of county commissioner is an office provided for by section 1 of article XIV of the Constitution. In Vankirk *v.* Clark and Graham, 16 S. & R. 286, it is said: "The commissioners of a county are coeval with the settlement of the county—are the public agents of the county with respect to all the money concerns, and must necessarily possess an authority, without any express grant from the legislature, commensurate with their public trusts and duties;" and in Schwamble *v.* The Sheriff, 22 Pa. 18, that "the commissioners have a right, and it is their duty, to manage the financial affairs of the county. They are the guardians of the treasury, and no money can be paid out except on their order. All special contracts for and on behalf of the county are made by them." See, also, Chester County *v.* Barber, 97 Pa. 455. The defendants, therefore, have an undoubted right to make a contract with the Commissioners of the County of York for the erection of a bridge over the Susquehanna River, unless restrained from doing so by some act of the legislature, and I have not found any such act, nor has one been brought to my attention.

Section 10 of article IX of the Constitution of this States provides that "any county, township, school district or other municipality incurring any indebtedness shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof within thirty years." By the amendment of Nov. 4, 1913, the 15th section of the same article changed this general rule, so that obligation for the construction or acquisition of water-works, subways, underground railways or street railways, or the appurtenances, were eliminated from these requirements under certain circumstances. These modifications, however, do not embrace the building of inter-county bridges, and, therefore, need not be the subject of consideration in the present controversy. It is certain that there is no section in the Constitution of this State which authorizes counties to build or acquire toll bridges and issue bonds solely on the faith of the bridge and its tolls, and not in accordance with section 10 of article IX, above quoted. It, therefore, seems to me to follow that if the defendants attempt to contract an indebtedness for this bridge and to issue bonds for the same, without making any arrangement for the payment of principal and interest, as called for in this section of the Constitution, they are attempting to do what is not authorized by law. Whether or not the Act of 1923 gives any such authority is not to me entirely clear. It is not so specifically stated in the act. But if it can be so construed, it is contrary to the mandates of the Constitution, and is, therefore, in my judgment, nugatory and void.

The case of Lesser *v.* Warren Borough, 237 Pa. 501, while not exactly in point with the present case, nevertheless, throws some side-lights on the general proposition. There, the borough, in accordance with the Act of May 31, 1907, P. L. 355, as amended by the Act of April 22, 1909, P. L. 135, purchased water-works and attempted to issue bonds secured solely by the water-works, without any further liability on the part of the borough. Of course, the amendment to the Constitution of Nov. 4, 1913, was not then in force. It was decided that the purchase constituted an indebtedness, and as the amount,

with the other indebtedness due by the borough, aggregated a larger amount than 7 per cent. of the taxable property of the municipality, it was forbidden by the Constitution. Mr. Justice Brown, in delivering the opinion of the court, said: "While some courts have sustained the contention of the appellant that the debt which it would create is not one forbidden within the meaning of the Constitution, the weight of authorities, including our own, sustains the sounder rule that the letter and spirit of constitutional restriction upon municipal indebtedness are not to be evaded by any scheme or device such as the appellant would adopt. In determining whether any legislative or municipal act conflicts with the Constitution, its substance, and not its form, must always be the test. To sanction what the appellant proposes to do would permit municipalities burdened with debt almost up to the constitutional limit to constantly overstep it, with results easily to be conjectured. Public improvements which could not be made in the face of the Constitution would be made in defiance of it. To permit a borough or city to borrow money under a contract that it shall not be liable for its repayment, but that the lender must look solely to pledged municipal property or assets, would, in effect, annul the constitutional restriction upon municipal improvidence and strike down a safeguard against municipal profligacy."

The sum total of this opinion is: That counties are legally authorized to build inter-county bridges and to make such arrangement as is agreeable to them for the taking of tolls until the money expended, with interest, is paid, subject, however, to the approval of the State Highway Department; but when they borrow money for such a purpose, they must do it strictly in accordance with section 10 of article IX of the Constitution of this State; that the legislature has no power to make any other regulation, and any attempt to do so renders an act, to that extent, unconstitutional and void. Therefore, I am of the opinion that the defendants cannot contract an indebtedness for this purpose if, under the Act of 1923, it rests solely on the tolls to be collected, and that, if they are attempting to finance this proposition, as they admit, not under the provision of the Constitution, but on the faith of the tolls to be collected, they are acting contrary to law and should be prevented from so doing.

To that extent, a decree may be prepared by counsel.

From George Ross Eshleman, Lancaster Pa.