## Lane v. McDowell, County Controller

*Marker & Rial*, for petitioner.
*Paul J. Abraham*, for respondent.

COPELAND, P. J., January 6, 1936.—This case comes before the court on the petition of the plaintiff for a writ of mandamus upon the defendant, on which the court on December 21, 1935, issued a writ of alternative mandamus, returnable five days after service.

The petition set forth the following facts:

"1. Petitioner is a citizen of the City of Greensburg, Westmoreland County, Pennsylvania.

"2. On September 27, 1934, and prior thereto petitioner and plaintiff and Jay C. Jamison were the owners of certain real estate situate in the said City of Greensburg, on the southwesterly corner of Tunnel and North Main Streets, having thereon erected a brick building, the second and third floors of which were designed for office space.

"3. On September 27, 1934, petitioner as the renting agent for the said property entered into a lease with the County of Westmoreland for the leasing of the second and third floors of the hereinabove described property, the county agreeing to pay thereunto the sum of $60 per month.

"4. The said lease was duly entered into by the County

Commissioners of Westmoreland County pursuant to a resolution dated September 27, 1934, of the said Board of County Commissioners adopted at a meeting thereof, duly and legally held, at which said meeting all the Board of County Commissioners were present, authorizing the execution and delivery of the said lease with the said W. S. Lane.

"5. A request has been made by the National Reemployment Service under the supervision of the Federal Department of Labor to the County Commissioners of Westmoreland County to make provision for office room and payment therefor in the County of Westmoreland, there being no provision made by the Federal Reëmployment Service for the payment for this particular requirement; the office for such service in this county prior to September 27, 1934, had been on the second floor of the court house, in what was formerly the county road engineer's office.

"6. The National Reëmployment Service acts in conjunction with like activities of the Commonwealth of Pennsylvania in providing employment on various public enterprises and in relief of citizens of the county who otherwise would become public charges upon the taxpayers of the county.

"7. The Federal agencies controlling such service have refused and have made no provision for the payment for office space for the various local county administrative requirements in Westmoreland County, insisting that such activities are in relief of the taxpayers of this county, the cost of which should be borne by Westmoreland County; petitioner is advised and believes, and, therefore, avers that in many of the counties of the Commonwealth such office space has been provided and paid for by the county.

"8. A bill for the rental reserved and due under the said lease October 1, 1934, to December 31, 1935, was duly presented to and approved by the County Commissioners of Westmoreland County in the amount of $900, but the defendant, Garfield A. McDowell, County Controller of

Westmoreland County, has refused to approve the same and issue a warrant therefor on the county treasurer.

"9. The said claim of $900 is a just and legal claim against the County of Westmoreland and should be paid, but the said county controller, defendant, without sufficient legal warrant, as petitioner and plaintiff is advised, refuses to pay the same.

"10. Petitioner and plaintiff is without other adequate and specific remedy at law for the redress of the said grievances, other than the remedy herein prayed for."

To this petition the defendant filed an answer, admitting all the averments of fact except the ninth paragraph, which is a conclusion of law, the defendant averring that the county commissioners had no authority to enter into the lease and that the county is not liable to pay the bill for the same.

The lease, Exhibit A of the petition, entered into pursuant to the action of the board of county commissioners in regular session on September 27, 1934, recited that the premises were to be occupied exclusively as offices by the National Reëmployment Service and provided, as set forth in the petition, for a monthly rental of $60 per month, payable to the petitioner. The lease was formally executed by the petitioner as renting agent and by the county commissioners. Exhibit C, attached to the petition, is a bill for the rental in amount $900, approved for payment by the county commissioners.

This Federal relief service has been housed in the petitioner's property under this lease and has employed a large number of citizens of Westmoreland County who otherwise would not be employed and who consequently did not become a charge upon the county for relief through the poor board as they otherwise would have.

The question, therefore, in this case is this: If such a Federal agency relieves the taxpayers of the county of a burden which would otherwise be placed upon them, is it legally possible to impose upon the county the cost of

maintenance of their administrative headquarters in the county, that is, the rental for their office space?

It is admitted that the Federal legislation makes no provision for the rental of such space and it was admitted in the argument that the Federal Government expects the local authorities in the county to take care of this charge. Of course, if there were sufficient room in the courthouse to take care of this agency no question could arise, but the courthouse is filled up with the various public offices and no sufficient space is available.

It is stated in the defendant's brief that "it is not argued that the Federal agencies are not a benefit to the citizens of the county, but it is contended by counsel that before the counties can expend public moneys for this particular purpose they must have some right or authority given them by legislation", and that "the County Controller's reason for holding up payment of this bill was on account of the fact that no authority has been shown him for payment of the same and while there may be some indirect benefits come to taxpayers by reason of the fact that Federal reëmployment service has furnished jobs for certain individuals who might become charges ... yet there was not sufficient legislation to allow the county to contract for the particular service for which the charge is made." It was further stated that "While it may be argued that the county has authority to take care of its poor and indigent, yet it is a recognized fact that the right is exercised by the poor board and not the county commissioners, the duty of the county commissioners being to furnish money to the poor board."

In this county, by authority of appropriate legislation, the Directors of the Home for the Destitute, commonly called the poor board, make a requisition upon the county commissioners at the beginning of each year requesting that the county commissioners levy a tax sufficient to cover this requisition. This requisition includes not only maintenance of the poorhouse and poor farm but also outdoor relief.

It was argued by counsel for petitioner that there were approximately 12,000 families, or about 40,000 people, now on Federal relief in our county. If the Federal Government had not taken care of this relief the charge for their maintenance would have been placed directly upon the taxpayers of the county. This statement was admitted to be true by counsel for the defendant at the argument. So, then, we have the situation of a Federal relief agency coming into the county, opening up its headquarters and taking care of many thousands of our people who would otherwise be a charge upon the taxpayers, and the question in the last analysis is whether or not the county in such a situation can pay for space for administrative headquarters, a relatively small charge, no provision being made therefor in the Federal legislation or budgets.

We think there is sufficient warrant in the law for this expenditure.

In the case of The County of Allegheny v. The Western Pennsylvania Hospital, 48 Pa. 123, it was said by Chief Justice Woodward, at page 126:

"If the county jail should be burned, or rendered uninhabitable by infectious disease, or other cause, and the commissioners acting in good faith should hire prisoners kept in some other suitable place, can it be doubted that the county would be liable for the debt thus incurred? A defect of statutory authority might be pleaded in such cases as in this, but it should be remembered that all the powers and duties of county commissioners are not defined by statutes. They are the representatives of the county, which is a *quasi* corporation, and they exercise the corporate powers. In Vankirk *v.* Clark, 16 S. & R. 290, it was said the commissioners of a county are coeval with the settlement of the country, are the public agents of the county with respect to all money concerns, and must necessarily possess an authority, without any express grant from the legislature, commensurate with their public trusts and duties. In Schnable *v.* The Sheriff,

10 Harris 19, the court said the commissioners have a right, and it is their duty, to manage the financial affairs of the county—all special contracts for or on behalf of the county are made by them. In the performance of these duties they have a wide latitude of discretion.

"I might collect from numerous cases similar expressions of the opinion of this court touching the general powers of county commissioners, but it is unnecessary. We think their powers were fully adequate to the making of the contract in suit. The wisdom, necessity, and humanity of their conduct are not questioned, but only their legal authority. We hold that this was equal to the emergency."

The legislation and the cases show that the commissioners are the representatives of the county and through them the county's corporate powers are exercised. They manage its financial affairs and make all contracts respecting its property and its interests. And while it is doubtless true in many cases that there is legislative authority for dealing with specific instances, it is also true that the commissioners' powers and duties are not limited by statute, but in the exercise of these powers and the performance of these duties they have considerable latitude of discretion. Whatever, therefore, in the exercise of their discretion would seem to be necessary for the financial welfare of the county, they have full power and authority to do in its behalf touching the business of the county: Cooper et al. v. Lampeter Twp., 8 Watts 125; Vankirk v. Clark et al., 16 S. & R. 286.

Thus in Schwamble v. The Sheriff, 22 Pa. 18, Chief Justice Black said, at pages 19 and 20:

"The commissioners have a right, and it is their duty, to manage the financial affairs of the county. They are the guardians of the treasury and no money can be paid out except on their order. All special contracts for and on behalf of the county are made by them. They must see to the collection of the debts due to the county, and provide the ways and means to meet those which it owes.

In the performance of these duties they have a wide latitude of discretion. They are not bound to sue a debtor of the county from whom they know that nothing can be recovered; and where a prisoner is detained merely for non-payment of costs, even in a criminal case, they may advance the sum necessary to discharge him if they are satisfied that by doing so money can be saved to the treasury. The last seems like a stretch of power, but it has been sanctioned by the approbation of several eminent judges of this Court, though not by any direct adjudication".

The case of Vankirk v. Clark et al., supra, was cited with approval in County of McKean v. Young, Commr., 11 Pa. Superior Ct. 481, where, on page 489, Judge Smith said:

"A county is a quasi corporation, and its corporate powers are to be exercised by the commissioners: Kittanning Academy v. Brown, 41 Pa. 269; Act of April 15, 1834, P. L. 537, secs. 3, 4. Except on a few points, the powers of the commissioners are not expressly or directly defined by statute. But, as public agents of the county, exercising its corporate powers, their authority must necessarily be commensurate with the scope of their duties in the premises: Van Kirk v. Clark, 16 S. & R. 286."

Counsel for the defendant calls attention to the provisions of The General County Law of May 2, 1929, P. L. 1278, art. II, sec. 22, page 1282:

"General Powers.—Each county shall have capacity as a body corporate to . . .

"(c) Make such contracts as may be necessary for carrying into execution the laws relating to counties."

In this connection it will be observed that The General County Law, supra, is a codification of county law and this paragraph is taken from section 3 of the Act of April 15, 1834, P. L. 537, and also that "the laws relating to counties" are inclusive not only of the statutory law but also of the common law which has been announced

from time to time by the Supreme Court of our Commonwealth.

If the legislature intended that the counties should make only such contracts as may be necessary for carrying into execution the legislation or statutory law relating to counties, it doubtless would have so said, but the laws relating to counties are to be found not only in the statutes but also in the common law of the State as that common law is to be found in the reported cases. This is evident from the words of Judge Smith, in County of McKean v. Young, Commr., supra: "Except on a few points, the powers of the commissioners are not expressly or directly defined by statute."

Moreover the contention of counsel for the defendant that under The General County Law, supra, art. II, sec. 22, only such contracts as are expressly authorized under the code may be entered into, is not warranted by a careful reading of the act. If the legislature had intended that the power to contract was to be so limited doubtless it would have said so, but we fail to find such a limitation.

If the Federal Government had proposed to the County of Westmoreland that it would take care of needy people, thereby relieving the taxpayers of the county of a heavy burden running into hundreds of thousands of dollars, provided the county pay a relatively small sum for the housing costs of the local administrative unit, could it be supposed that the county commissioners in justice to the taxpayers of the county and in discharge of their duties could refuse to accept such an offer because of an absence of statutory power to make such a contract? The logic of all our cases would justify no such a conclusion, but on the contrary the cases we have cited warrant the conclusion that the county commissioners would have such power notwithstanding the fact that there is no literal statutory authority warranting such a specific contract.

The Federal Government, however, instead of exacting a promise on the part of the county to pay, insisted that the county must take charge of the cost of the housing

of the local administrative unit of the National Reëmployment Service. This Federal unit has been functioning in the county for more than 15 months and the Federal Government has acted as though a contract had been entered into with the county.

Certainly a moral obligation rests upon the county under such circumstances to pay a comparatively trifling sum in return for the vast sums spent in relief of the taxpayers of this county. As a matter of sound law and good common sense, the action of the county commissioners under the circumstances was justified and the plaintiff should be paid.

The county commissioners represent all the citizens of the county in which they are elected, and are not permitted to do anything which the law forbids them to do, but they have the inherent power to enter into contracts, which are in relief of the citizens of the county, both in providing employment and in saving money for its citizens. By entering into this contract, they not only provided work through the Federal relief agency for those out of employment, but they saved money for the taxpayers of the county which they otherwise would have had to pay for the support of the indigent people out of employment.

It is not denied that this relief agency has saved the taxpayers of the county many thousands of dollars and is in relief of those it has employed, who otherwise would have been unable to provide the necessaries of life for themselves and in all probability would have become charges on the county.

Therefore, the position taken by the controller in refusing to pay this rental for office space for the National Reëmployment Service is not well taken or tenable, either from the standpoint of the business of taking care of the interests of the taxpayers, which is the duty of the county commissioners, or of public policy, when viewed in the light of the small amount of money expended by the county commissioners as compared with the employ-

ment of its indigent people and the saving to the taxpayers of money that otherwise would have been necessary to be expended for their relief.

And now, to wit, January 6, 1936, after argument and after due and careful consideration, it is ordered, adjudged and decreed that a writ of peremptory mandamus issue forthwith commanding Garfield A. McDowell, the County Controller of Westmoreland County, or his successor, to approve forthwith a warrant on the county treasurer for the payment of the plaintiff's claim in the amount of $900 for the rent of the quarters of the National Reëmployment Service, as shown by exhibit C attached to the plaintiff's petition.